UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USA,<br><br>    Plaintiff,<br><br>  v.<br><br>GARCIA,<br><br>    Defendant. | Case No. 5:24-cr-00226-BLF-9<br><br>**ORDER GRANTING DEFENDANT GUSTAVO GARCIA'S MOTION TO DISMISS OR STRIKE SPECIAL SENTENCING FACTOR ONE**<br><br>[Re: ECF No. 305] |

In this RICO conspiracy prosecution, the Government alleges that Defendant Gustavo Garcia and one co-defendant committed a murder in July 2014, when Mr. Garcia was fifteen years old. ECF No. 1 ("Indictment") ¶ 16. The Government takes the position that Mr. Garcia is eligible for a sentence of life imprisonment under section 190 of the California Penal Code, attaching the July 2014 alleged murder as a "special sentencing factor" to the indictment charging Mr. Garcia. ECF No. 92 at 5. Mr. Garcia now requests that the Court strike this special sentencing factor and issue an order declaring that the maximum sentence he faces in this prosecution is the twenty years provided by the RICO statute. ECF No. 305 ("Mot."). The Government filed an opposing brief, and Mr. Garcia filed a reply brief. ECF No. 318 ("Opp."); ECF No. 321 ("Reply"). The Court heard oral argument on October 14, 2025.

For the reasons below, Court GRANTS the motion.

I.   BACKGROUND

On April 18, 2024, the United States filed an indictment charging Mr. Garcia and ten other defendants with RICO conspiracy in violation of 18 U.S.C. § 1962(d). Of the thirty-seven overt acts alleged in the indictment, Mr. Garcia was named in three, including a murder alleged to have taken place on July 19, 2014, in Salinas, California. Indictment ¶ 15(d). Mr. Garcia was fifteen

years old at the time of the alleged murder.[1]  The indictment alleges that Mr. Garcia participated in the racketeering conspiracy through the date the indictment was returned (at which time he was twenty-five years old), as well as additional overt acts by Mr. Garcia that were alleged to have occurred when he was no longer a minor.  *Id.* ¶ 15(x).

The Government gave notice of "special sentencing factors" to four defendants, including Mr. Garcia, alleging that they had committed murder in violation of the California Penal Code.  *Id.* ¶¶ 16–17.  As to Mr. Garcia, this special sentencing factor restated the alleged July 2014 murder.  The penalty sheet on the indictment indicates a maximum punishment of twenty years' imprisonment for the defendants not charged with a special sentencing factor and a maximum punishment of life imprisonment for the four defendants, including Mr. Garcia, charged with a special sentencing factor.  ECF No. 1, Indictment Penalty Sheet at 14–24.

Mr. Garcia does not challenge the inclusion of the alleged July 2014 murder as an overt act in the indictment and seeks only an order by the Court striking the special sentencing factor exposing him to a maximum term of life imprisonment.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) allows a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Rule 7(d) allows a defendant to move to "strike surplusage from the indictment."  The purpose of a motion to strike under Rule 7(d) is "to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges."  *United States v. Laurienti*, 611 F.3d 530, 546–47 (9th Cir. 2010).

## III. DISCUSSION

Mr. Garcia's argument for why the Court should strike the special sentencing factor is straightforward—because Mr. Garcia was fifteen years old when he was alleged to have participated in the July 2014 murder, he would not be eligible for a sentence of life imprisonment were this case to be brought in a California criminal court.  The Government disagrees with

---

[1] Mr. Garcia was born in January 1999.

Mr. Garcia's interpretation of the relevant statutory framework and provides additional arguments as to why striking the special sentencing factor would be improper. As described below, the Court concludes that California law does not permit an individual who committed murder at the age of fourteen or fifteen years old to be sentenced to a term of life imprisonment and that the Government's arguments against striking the special sentencing factor are unpersuasive.

### A. Mr. Garcia Would Not Face Life Imprisonment in State Proceedings

The Court agrees with Mr. Garcia that under California law an individual found to have committed murder at the age of fifteen years old would not be eligible for life imprisonment. The law on this point is somewhat convoluted and has been subject to repeat amendment by the state legislature, but the Court is satisfied that, as the law stands today, a juvenile court would retain jurisdiction over the alleged July 2014 murder, precluding a life sentence for Mr. Garcia. Due to its complexity, the Court begins with a brief overview of California's criminal and juvenile legislative schemes.

The historical practice in California was that "a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law." *People v. Superior Ct.* (*Lara*), 4 Cal. 5th 299, 305 (2018) (quoting *Juan G. v. Superior Ct.*, 209 Cal. App. 4th 1480, 1488 (Cal. Ct. App. 2012)). The general rule was that a minor who violates the criminal law was within the jurisdiction of the juvenile court, which could adjudge the minor a ward of the court. *See id.* This changed with the passage of Proposition 21, entitled the Gang Violence and Juvenile Crime Prevention Act of 1998, on March 7, 2000, which "broadened the circumstances in which prosecutors are authorized to file charges against minors 14 years of age and older in the criminal division of the superior court, rather than in the juvenile division of that court." *Manduley v. Superior Ct.*, 27 Cal. 4th 537, 545 (2002), *as modified*, (Apr. 17, 2002). One notable feature of Proposition 21 was that it required district attorneys to charge individuals between the ages of fourteen and eighteen years old who were accused of specified murders and other serious crimes directly in adult criminal court rather than juvenile court. *See* 2000 Cal. Legis. Serv. Prop. 21 (WEST); *see also People v. Superior Ct.* (*Alexander C.*), 34 Cal. App. 5th 994, 997 (Cal. Ct. App. 2019).

Many of the changes implemented by Proposition 21 were subsequently rolled back in November 2016, when voters approved Proposition 57, entitled the Public Safety and Rehabilitation Act of 2016, with its focus on rehabilitation of juvenile offenders, for whom Proposition 57 "'largely returned California to the historical rule' by eliminating direct filing in criminal court." *Alexander C.*, 34 Cal. App. 5th at 997 (quoting *Lara*, 4 Cal. 5th at 305). Proposition 57 thus reintroduced the rule that certain juvenile offenders could only be tried in criminal court "after a juvenile court judge conducts a transfer hearing to consider various factors." *Lara*, 4 Cal. 5th at 305–06. The scheme for transfer hearings was bifurcated according to a juvenile offender's age at the time of the offense: "For minors 16 or older, district attorneys [could] seek transfer to criminal court for any felony offense. For 14- and 15-year-olds, district attorneys could seek transfer to criminal court only for specified serious or violent offenses." *Alexander C.*, 34 Cal. App. 5th at 998 (internal citations omitted).

The current scheme took effect on January 1, 2019, with the enactment of Senate Bill No. 1391, which "eliminate[d] the district attorneys' ability to seek transfer of 14- and 15-year-olds from juvenile court to criminal court, save for a narrow exception if the minor is 'not apprehended prior to the end of juvenile court jurisdiction.'" *Id.* (quoting Welf. & Inst. Code § 707(a)(2)). One purpose of Senate Bill No. 1391 was "to acknowledge the lesser culpability of these youthful offenders" aged 14- or 15- years old. *People v. Hwang*, 60 Cal. App. 5th 358, 366 (Cal. Ct. App. 2021). The relevant statute thus provides:

> (1) In any case in which a minor is alleged to be a person described in § 602 by reason of the violation, when the minor was 16 years of age or older, of any offense listed in subdivision (b) or any other felony criminal statute, the district attorney or other appropriate prosecuting officer may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction. . . .
> (2) In any case in which an individual is alleged to be a person described in § 602 by reason of the violation, when the individual was 14 or 15 years of age, of any offense listed in subdivision (b), but was not apprehended prior to the end of juvenile court jurisdiction, the district attorney or other appropriate prosecuting officer may make a motion to transfer the individual from juvenile court to a court of criminal jurisdiction. . . .

Welf. & Inst. Code § 707(a)(1)–(2). Juvenile court jurisdiction is virtually indefinite for an individual charged with violating the criminal code as a minor. *See, e.g.*, *People v. Ramirez*,

4

35 Cal. App. 5th 55, 66 (Cal. Ct. App. 2019) ("Because the juvenile court's jurisdiction is based on age at the time of the violation of a criminal law . . . . [i]t is therefore possible that a person might commit a murder at age 17, be apprehended 50 years later, and find himself subject to juvenile court jurisdiction at age 67." (internal quotation marks and citations omitted)).  In 2023, Senate Bill No. 135 amended section 607(d) of the Welfare and Institutions Code to clarify that a juvenile court "may retain jurisdiction over a person who is 25 years of age or older for a period not to exceed two years from the date of disposition."

With this statutory background in mind, the issue before the Court—whether Mr. Garcia could be sentenced to a term of life imprisonment if convicted of the alleged July 2014 murder—becomes quite simple.  A straightforward application of section 707(a)(2) of the Welfare and Institutions Code forcefully answers the question in the negative:  Because he was fifteen years old at the time of the alleged murder, he would still be subject to the jurisdiction of the juvenile court and would not be subject to the penalties for homicide set forth in sections 190 and 190.5 of the California Penal Code.  *See* Cal. Rule of Court § 5.806(a).

The Government disputes this interpretation, arguing that the plain meaning of the statute is that the availability of transfer to adult criminal court is based on the age of the individual at the time of the indictment, not at the time of the offense. Opp. at 12–13.  Specifically, the Government seizes upon the statute's use of the term "minor":  "Instead of referring to 'a person,' Section 602(a) provides that juvenile court jurisdiction attaches for '*any minor*' who commits certain crimes." *Id.* at 13.  But the Court must give meaning to the provision as written, not chop the text up into bits and pieces and infer meaning from those scraps.  Section 602(a) in its entirety provides:  "Except as provided in Section 707, *any minor who is between 12 years of age and 17 years of age, inclusive, when he or she violates any law* of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge the minor to be a ward of the court." Cal. Welf. & Inst. Code § 602(a) (emphasis added). The import of "any minor" is informed by the subordinate clause beginning with "when he or she violates any law," clarifying that the relevant inquiry is the age of offending, not the age at the time of the

5

indictment.

The Government's interpretation would create an absurd dichotomy: A clever district attorney could wait until a juvenile criminal suspect's eighteenth birthday to initiate state criminal proceedings in order to avoid the juvenile court's jurisdiction. In other words, the maximum sentence for an individual alleged to have committed a crime at the age of fifteen years old would not depend on the age at the time of the offense—despite the legislative history of the statutory scheme as described above being explicitly keyed to this metric—but rather an individual district attorney's patience. This reading plainly contradicts one of the purposes of Senate Bill No. 1391, which was "to acknowledge the lesser culpability of these youthful offenders" aged 14- or 15-years old. *Hwang*, 60 Cal. App. 5th at 366. The offender's culpability is not diminished by virtue of their being a minor at the time of criminal proceedings but rather by their being a minor at the time at which their culpability is most consequential, i.e., the time of the offense. In any case, as a federal court applying state law, the role of the Court is to interpret the statutory scheme in a manner consistent with California state courts, which have rejected the Government's interpretation. Although the Court agrees with the Government that the court's discussion in *Ramirez* that juvenile jurisdiction could attach to a sixty-seven-year-old defendant is dicta, *see* 35 Cal. App. at 66, the Court finds it telling that the Government cannot point to a single state court case supporting its position.

**B. Striking the Special Sentencing Factor from the Indictment is Appropriate**

The Court thus agrees with Mr. Garcia's position that he could not face life imprisonment for the alleged July 2014 murder as a matter of California law. The Government argues that striking the special sentencing factor is still unwarranted, urging that Mr. Garcia has failed to meet the exacting standard required for a motion to strike surplusage and that Mr. Garcia is nonetheless eligible for life imprisonment even if he would not be eligible for life imprisonment in a state court proceeding. The Court considers each argument in turn, ultimately finding each of them to be lacking.

**1. The Inclusion of the Special Sentencing Factor is Irrelevant and Prejudicial**

First, the Government argues that Mr. Garcia has failed to demonstrate that the inclusion of

the special sentencing factor in the indictment is irrelevant and prejudicial. Opp. at 2. Specifically, the Government argues that the inclusion of the special sentencing factor "would not inflame or otherwise confuse the jury" and that, in any case, "it is not clear at this stage whether the indictment in its current form would ever be read or otherwise provided to the jury if this case were to go to trial." *Id.* at 4. The Court finds the Government's articulation of prejudice in this case to be too narrow—although it is true that a criminal defendant may be prejudiced by inflammatory or otherwise improper characterizations by the Government, these are not the only types of unfair prejudice such a defendant may face. The Government cites a variety of cases for the proposition that the standard for a Rule 7(d) motion is "exacting," but its cases simply do not substantiate its suggestion that material may not be stricken from an indictment unless the defendant proves that it would prejudice the jury against him.

The primary case the Government cites for this position is *United States v. Hedgepeth*, 434 F.3d 609 (3rd Cir. 2006), where the appeals court held that a district court did not abuse its discretion in denying a motion to strike portions of a superseding indictment where the indictment was not read to the jury. *Id.* at 613. But *Hedgepeth* was decided upon a completely different procedural posture: after a criminal defendant had already been convicted by a jury and challenged the trial on appeal. *Id.* at 610. It makes sense that in an appeal of a criminal trial, the appeals court would consider whether the defendant had suffered any prejudice before the jury by the inclusion of the challenged information in the indictment. That does not mean that such prejudice is the only kind of prejudice that is relevant. It is self-evident that Mr. Garcia is prejudiced by the Government's assertion that he faces life imprisonment, and this pretrial prejudice may manifest itself for example by denying him leverage in preliminary plea negotiations and forcing him to accept a plea providing for a term of incarceration greater than the twenty-year statutory maximum provided by RICO.

The Government's assertion that the special sentencing factor is relevant "insofar as it provides the defendant with the requisite notice that he may face a custodial sentence exceeding 20 years if he is convicted" is circular. Opp. at 5. The issue presently before the Court is directed to that precise question. Neither party disputes that the Government may choose to present

1 evidence pertaining to the alleged July 2014 murder at trial but that evidence for this specific
2 alleged overt act is not required for a conviction. Because the Court concludes that Mr. Garcia as
3 a matter of law cannot be sentenced to more than twenty years' imprisonment, it agrees with
4 Mr. Garcia that the inclusion of the special sentencing factor is irrelevant.

### 2. Mr. Garcia's Motion is Not Premised on State Procedural Law

The Government next argues that Mr. Garcia's motion must be denied because it "is premised on the flawed notion that California procedural law regarding juvenile court jurisdiction bears on this federal RICO prosecution." Opp. at 5. The Court agrees with the Government that "state procedural and evidentiary law has no bearing on a RICO prosecution where the indictment alleges racketeering acts that are predicated on violations of state law." *Id.* (citing cases). The Court does not agree, however, with the Government's assumption that California's system for determining the range of punishments available in prosecutions for acts committed by juvenile offenders is merely procedural.

RICO authorizes a maximum of life imprisonment if "the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." 18 U.S.C. § 1963(a). The Court agrees with Mr. Garcia that the issue whether a state violation "includes" life imprisonment as a maximum penalty is a substantive issue of state law rather than a procedural issue akin to a statute of limitations. Reply at 2–3 *cf.* Opp. at 7 (collecting cases where federal courts declined to incorporate state statutes of limitation in RICO prosecutions). The Government cleverly attempts to frame the state law at issue here as merely procedural, i.e., determining in which court state law proceedings would be heard. Not so. As described above, California's current scheme for adjudicating criminal offenses committed by minors represents the culmination of twenty years of rigorous public debate: California's choice to foreclose adult criminal prosecution of offenses committed by fourteen- and fifteen-year-olds is a substantive policy choice that defines the maximum punishment such a minor may be subjected to, not a mere procedural rule governing the time within which a prosecution may be brought or the type of evidence that may be admitted.

The Court finds it significant that the only reported federal case squarely addressing the

issue of state law punishment for a juvenile convicted of murder and the maximum sentence under RICO supports Mr. Garcia's position. In *United States v. Lee*, 618 F. Supp. 3d 797 (N.D. Ill. 2022), the Government identified several murders in its "Notice of Special Circumstances" putting the defendant on notice that the Government sought a special verdict for life imprisonment under 18 U.S.C. § 1963(a). *Id.* at 803. Because one of those murders occurred when the defendant was seventeen years old, the Government conceded that Illinois state law did not authorize life imprisonment under the statutory provision cited in the Notice of Special Circumstances, and the district court dismissed the Notice related to that alleged murder. *Id.* at 804.

The Government makes a half-hearted attempt to distinguish *Lee* by urging that the Illinois statute "on its face, applied only to defendants who were not minors at the time they committed the murder," whereas California's first-degree murder statute applies to "[e]very person." Opp. at 10 (alteration in original) (quoting Cal. Penal Code § 190(a)). This provision does not, however, exist in a vacuum. The relevant penalty statute for minors is Penal Code section 190.5, which provides a court may sentence sixteen- and seventeen-year-old defendants convicted of first-degree murder to life in prison without the possibility of parole or twenty-five years to life. Under the Government's theory, California law would provide for fourteen- and fifteen-year-old defendants to be sentenced as adults but create a carve-out for sixteen- and seventeen-year-olds. The Court finds that the more plausible explanation is simply that California's sentencing provisions do not apply to defendants within the jurisdiction of the juvenile courts. Contrary to the Government's suggestion otherwise, the legislative scheme here is, as relevant, nearly identical to the scheme confronted by the *Lee* court.

**3. Mr. Garcia Could Not Receive a Life Sentence Because of His Co-Defendant**

Finally, the Government argues that because one of Mr. Garcia's co-defendants is also alleged to have committed the July 2014 murder, Mr. Garcia could "still be subject to a potential life sentence for racketeering conspiracy based on a finding that the conspiracy entailed [his] agreement that [the co-defendant] would commit the . . . murder." Opp. at 11. The Government cites no case law whatsoever for its novel interpretation. As Mr. Garcia points out, the Government's position would appear to suggest that "every one of Mr. Garcia's ten co-defendants

9

is facing a potential life sentence regardless of whether he committed a homicide because he entered a conspiracy that involved racketeering activity consisting of multiple acts involving murder," making the government's original notice of special sentencing factors as to the four defendants superfluous. Reply at 6 (internal quotation marks and citation omitted). In any case, the indictment does not charge Mr. Garcia with conspiracy to commit murder in aid of racketeering, a crime with a maximum sentence of ten years, *see* 18 U.S.C. § 1959(a)(5).

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Mr. Garcia's motion is GRANTED.

(2) The special sentencing factor on the indictment charging Mr. Garcia is STRICKEN.

Dated:  October 17, 2025

BETH LABSON FREEMAN
United States District Judge